### RACE & FOSTER *v.* OWEN BRUEN.

An authentic act identifying a note with the mortgage to secure it, which recites that B. mortgages &c. to C. & M., or *any holder of said note*, and further shows the note to be endorsed in blank by the payee, will entitle the holder, on this proof alone, to an order of seizure and sale.

The subsequent endorsement of the note in blank by another—which is a matter *in pais*—could not affect plaintiffs' right to executory process, as such endorsement could be stricken out—possession of the note being sufficient to identify them as holders and owners.

A stipulation in the Act of Mortgage that the mortgagor, in the event the debt has to be made by suit, shall pay five per cent. to the attorney, is not usurious; and the circumstance that the holders of the note are attorneys at law is no bar to their recovery of the five per cent.

C. C. 1952, 2615, 3251 ; C. P. 733, 734.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J. *Race & Foster*, in *p. p.   Duncan & McConnel*, for defendant and appellant.

VOORHIES, J.* The defendant relies upon the following assignment of errors apparent upon the face of the record for the reversal of an order of seizure and sale, from which he is appellant:

1st. There is no authentic evidence in the record of the plaintiffs' title to the note sued on.

2d. There is no legal nor authentic evidence that the plaintiffs are the assignees or owners of the mortgage.

3d. There is a stipulation in the act of mortgage to pay usurious interest. This appears from the following clause recited therein : "that in default of punctual payment of said note, all the fees of the attorney employed by the holder thereof, to recover the same by suit or otherwise, &c. ;" and further, said attorney's fees being fixed, however, at five per cent.

. I. The allegation in the plaintiffs' petition is, "that they are the holders and owners of a certain mortgage promissory note, executed by *Owen Bruen* to his own order, and by him endorsed." The note thus declared upon is shown by authentic evidence to have been endorsed in blank by the maker, and is identified with the act of mortgage by the notary. The act recites, "that he (*Bruen*) does hereby mortgage and hypothecate, specially and by privilege, in favor of the said *Cook & Morehouse*, (the original creditors,) or *any holder* of said notes," &c. It is clear that such a note, accompanied with the act of mortgage, makes full proof of itself. Under the requirements of Articles 733 and 734 of the Code of Practice, the mere production of the note and mortgage in question by the plaintiffs, constituted in our opinion sufficient authentic proof of ownership or title in them to authorize the issuing of the order of seizure and sale. The subsequent endorsement of the note in blank by *Cook & Morehouse*—which is a matter *in pais*—it is evident, could not affect the plaintiffs' right to resort to the executory process, as such endorsement could have been stricken out—possession of the note being sufficient to identify them as holders and owners thereof. See the case of *Louis Mathé* v. *George McCrystal*, ante, lately decided by us.

II. In the language of the Code, Article 3251, "the mortgage is accessory to a principal obligation, which it is designed to strengthen, and of which it is to secure the execution." "The sale or transfer of a debt includes everything which is an accessory to the same, as suretyship, privileges and mortgages." C. C., 2615. Hence the transfer of the note to the plaintiffs in this case included the mortgage as its accessory ; and this was the contract also, for the mortgage was consented in favor of any holder of the note, and there was a special stipulation that it should entitle all holders to the executory process.

III. The defendant's objection on the score of usury is, we think, untenable. Interest for money is the compensation which is paid by the borrower *to* the lender for its use. It is clear, therefore, that the stipulation in this case cannot be considered as the compensation for the use of the lender's money, but the means only of securing that compensation. Thus, if the lender were obliged to pay at the expiration of the year the attorney's commission of five per cent., it is evident that the interest for the use of his money would be reduced from eight to three per cent. The equity of such a stipulation is obvious : it secures to the lender nothing more than the legal rate of interest stipulated for the use of his money. It does not enure to his benefit, but is allowed as compensation for professional services required to enforce the payment of the debt by

---

* Merrick, C. J., not being present at the argument, took no part in this decision.

RACE
*v.*
BRUEN.

suit. Had the defendant performed punctually his obligations as he had stipulated in the contract, it is certain that he would have had no just cause of complaint. But it is argued that the plaintiffs, being attorneys at law, are not entitled to recover the commission, inasmuch as the services in this suit have been performed by themselves. If such services were necessary, which is not denied, we are unable to discover any good reason why there should be any difference in regard to the compensation between those performed by the party himself and those by other counsel. The fees stipulated are usual, and there is no ground to suspect any device for concealing the charge of unlawful interest.

It is also assigned as error, that the writ directs the Sheriff to sell the defendant's property to satisfy the amount of a certain promissory note for the sum of $1000, with interest at the rate of eight per cent., &c., and five per cent. attorney's fees on the *aggregate* amount, &c. In this we do not think there is any error. The words of the contract, it appears to us, do not fairly warrant the inference contended for, that the intention of the parties was to restrict the five per cent. to the sum of $1000. In the collection of claims, the usual practice of the bar is to charge commission on the aggregate amount of principal and interest. This may well be invoked in aid of the interpretation of the contract, which is by no means free from doubt. Besides, "in a doubtful case, the agreement is interpreted against him who has contracted the obligation." C. C., 1952.

It is therefore decreed that the judgment of the court below be affirmed, with costs.

