AUTOMOBILE SECURITY CORP. v. RANDAZZA ET AL.

(May 25, 1931. Opinion and Decree.)
(July 1, 1931. Opinion and Decree on Rehearing.)
(October 6, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

Epley & Parlongue, of New Orleans, attorneys for plaintiff, appellant.

Roger Meunier, of New Orleans, attorney for Frank Cristina, defendant in rule and appellee.

JANVIER, J. Automobile Security Corporation obtained judgment against Generes Antonini and Peter Randazza for $50. For many months this judgment remained unsatisfied.

In an effort to collect the amount plaintiff caused to be issued a writ of fieri facias and under that writ effected the seizure of an Essex automobile belonging to Antonini.

It was discovered that prior to the seizure the said automobile had been mortgaged by Antonini and that the mortgage had been properly and seasonably recorded.

If that mortgage is valid and subsisting, the rights of the holder thereof are superior to those of the seizing creditor, so far as the mortgaged automobile is concerned. Recognizing this, the seizing creditor, by rule, has called upon Cristina, holder of the said mortgage note, to show cause why the said mortgage should not be canceled, it being alleged that the said note is violative of the provisions of section 13 of Act No. 7 of the Special Session of 1928 of the Legislature of Louisiana, which statute is commonly known as the Small Loan Law.

The said note stipulates to bear interest at the rate of 3½ per cent per month and also contains an agreement for the payment of attorney's fees at 15 per cent on the amount due in case of the employment of an attorney to effect collection, and it is charged that, since 3½ per cent is the maximum interest charge permitted by the act, the stipulation for attorney's fees in the event of the employment of an attorney renders the entire transaction usurious.

The court below held the transaction to be usurious and that, in accordance with the provisions of the statute, no recovery whatever could be had under the mortgage note. From that judgment the mortgage holder has appealed.

Prior to the enactment of the statute in question the policy of the state of Louisiana, announced in numerous decisions, was that the requirement that the maker of a note should pay attorney's fees did not render the note usurious merely because the interest stipulated for was the maximum amount permitted by law. It follows, then, that unless it can be held that the statute of 1928 specifically provides that the requirement of such fees shall render the transaction usurious, such result does not take place. Among the decisions to which we have referred as holding that attorney's fees stipulated for do not render a note usurious merely because the interest charged is the maximum permitted by law is Race & Foster v. Owen Bruen, 11 La. Ann. 34, in which the Supreme Court said:

"The defendant's objection on the score of usury is, we think, untenable. Interest for money is the compensation which is paid by the borrower to the lender for its use. It is clear, therefore, that the stipulation in this case cannot be considered as the compensation for the use of the lender's money, but the means only of securing that compensation. Thus, if the lender were obliged to pay at the expiration of the year the attorney's commission of five per cent, it is evident that the interest for the use of his money would be reduced from eight to three per cent."

See, also, Hailes v. Hynson et al., 12 Orleans App. 327; Seigel v. Drumm, 21 La. Ann. 8.

But counsel for the seizing creditor contend that the act of 1928 does specifically prohibit the stipulation for attorney's fees. In attempting the interpretation of the said statute, we think it advisable to bear in mind that the said statute is in the nature of a penal one and that, therefore, it should be construed strictly, and any

uncertainties should be resolved in favor of him who is sought to be penalized.

A careful study of the statute and particularly section 13, leads us to the view that it was not contemplated that there should be prohibited any necessary cost to which the lender might be put in securing the return of his loan. The language of the act seems to limit the prohibition to the collection of charges or costs required to bring the loan into existence, but we see nothing therein either specifically or impliedly prohibiting the stipulation for a necessary charge for collecting the loan. As a matter of fact, no matter what charge is stipulated for as attorney's fees, if the borrower meets his obligation, such charge cannot be collected. As the Supreme Court said in Race & Foster v. Bruen, supra, "had the defendant performed punctually his obligations, as he had stipulated in the contract, it is certain that he would have had no just cause of complaint."

Counsel for the seizing creditor calls to our attention the language used in the majority opinion in Davis Loan Company v. Blanchard, 14 La. App. 671, 130 So. 472. But that opinion did not become final. The decree was finally concurred in by all of the members of the court for the reasons that the facts of that case showed that the chattel mortgage had been executed not for the purpose of creating a real security, but solely for the purpose of furnishing a subterfuge under which an additional fee for passing the mortgage might be exacted, so that, under the facts of that case, there can be no doubt that the decree was correct. The question presented here was not finally passed upon in that case.

Counsel for the seizing creditor has also cited certain cases from other states, in which there can be no doubt that it has been held that the stipulation for the payment of attorney's fees renders such a transaction usurious. It may be that in those states, prior jurisprudence had not established the doctrine that attorney's fees, when stipulated for in ordinary notes, did not constitute usury. At any rate, such a doctrine has been established in Louisiana and we do not think that the statute in question either impliedly or specifically indicates that the framers thereof intended to change the rule in this regard.

Much capital is sought to be made of the fact that the financial condition of persons who borrow under the so-called Small Loan Law is such that they have no alternative, and it is argued that, therefore, the statute should be liberally interpreted in their favor. It is very true that the business of lending money has been frowned upon from time immemorial, but it is also true and should be borne in mind that, without the money lender, the hardships of which the borrowers now complain would be many times greater. It is no doubt a misfortune to have to borrow money, but how much greater would be the misfortune were there no opportunity for borrowing. Sir Francis Bacon, in discussing the question of whether the evils of money lending outweigh the benefits to be derived therefrom, said that it is highly important "that there be left open a means to invite monied men to lend." Whether the Russell-Sage Foundation, in the investigation made by it, came to the conclusion that in the charge approved by it there was to be included the necessary legal expense to which the lenders should be put, we have no means

of determining, but we cannot escape the view that it was not the purpose to drive the money lenders out of business because, no matter what may have been the views of that foundation, the results of its investigations would have been of no benefit whatever if the money lenders had been thereby forced to seek other lines of more remunerative employment. Unquestionably then, it was intended that, though the rate of interest should be made for the benefit of the borrower as low as possible, it should nevertheless be allowed to remain sufficiently high to tempt those financially able to invest in the misfortunes of others to embark upon the more or less hazardous occupation of money lending. If, then, such was the purpose of the foundation, and 42 per cent per year was the rate arrived at as being necessary to tempt the investment of capital into the money lending business, surely to require capital to pay all the costs of collecting the more or less hazardous loans would defeat, in a large measure, the purpose intended to be accomplished.

We are limited in our investigation to the act itself and to the jurisprudence of this and other states, and a consideration of that statute and of the jurisprudence to which we have referred leads us to the view that attorney's fees may be stipulated for and that such stipulation does not render a transaction usurious, under the statute · in question, even though the interest charge is the maximum permitted by the statute. Since the transaction was not violative of the provisions of the statute, the rights of the mortgage holder must prevail.

The judgment appealed from is annulled, avoided and reversed, and the rule is dismissed at the cost of mover.

WESTERFIELD, J., dissenting. The opinion in Davis Loan Company v. Blanchard, 14 La. App. 671, 130 So. 472, was prepared by me without the advantage of Seaboard Securities Company v. Jones, 40 Ga. App. 710, 151 S. E. 412; Jobson v. Masters, 32 Ga. App. 60, 122 S. E. 724; Fishburne v. Hartsfield Loan Co., 38 Ga. App. 784, 145 S. E. 495; London Realty Co. v. Riordan, 207 N. Y. 264, 100 N. E. 800, Ann. Cas. 1914C, 408. After reading the able opinions in the cited cases, I am convinced of the correctness of the views expressed in Davis Loan Company v. Blanchard.

I therefore respectfully dissent.

———

ON APPLICATION FOR REHEARING

PER CURIAM. In our original opinion we stated that the court below had held the note in question to be usurious and, through inadvertence, we decreed that the judgment of the trial court be reversed. We find that the trial court held that the transaction was not usurious and rendered judgment dismissing plaintiff's rule. It was our intention to affirm the decree dismissing plaintiff's rule, and it is now, therefore,

Ordered, adjudged and decreed that the decree rendered be and it is recalled and that the judgment appealed from be and it is affirmed and that the rule be and it is dismissed, at the cost of appellant.

The right is reserved to file application for rehearing.