153 So. 833

FOUNDATION FINANCE CO., Inc., v. ROBBINS et al.

No. 32647.

Feb. 26, 1934.

See, also, 144 So. 293.

Guy J. D'Antonio, of New Orleans (Weiss, Yarrut & Stich and Gill & Simon, all of New Orleans, of counsel), for applicant.

Benjamin Y. Wolf, of New Orleans, for respondent Harry Rosenberg.

Fred G. Benton, of Baton Rouge, for amicus curiæ in support of application for certiorari or writ of review.

Sanders, Baldwin, Haspel & Molony, Robert Weinstein, Prowell, McBride & Ray, Friedrichs, Connolly & Simoneaux, Frymire & Ramos, and Frank B. Twomey, all of New Orleans, amici curiæ.

O'NIELL, Chief Justice.

█ This is a suit on a promissory note for $300, alleged to have been given for a loan made by the plaintiff under the provisions of the Small Loan Law, Act No. 7 of the Extra Session of 1928. The only question is whether the stipulation in the note that the maker shall pay an attorney's fee of 25 per cent., in addition to the maximum rate of 3½ per cent. interest per month, in the event of its being necessary for the holder of the note to employ an attorney to collect it after maturity, renders the whole obligation void and unenforceable, according to the thirteenth section of the statute. The district judge held that the stipulation for the payment of the attorney's fee, being in addition to a stipulation for the payment of the maximum rate of interest allowed by the statute, annulled the obligation; and the judge therefore dismissed the suit on an exception of no cause or right of action. The judgment was affirmed by the Court of Appeal. The case is here on a writ of review, issued at the instance of the plaintiff, Foundation Finance Company, Inc.

The thirteenth section of the statute provides that a person, partnership, or corporation, licensed to make loans under the provisions of the act, may make loans not exceeding $300 at a rate of interest not exceeding 3½ per cent. per month; and the section provides:

"In addition to the interest herein provided for, no further charge or amount whatsoever for any discount, examination, service, brokerage, commission or other thing or otherwise shall be directly or indirectly charged, contracted for or received, except the lawful fees, if any, actually and necessarily paid out by the licensee to any public officer for the filing or recording or releasing in any public office any instrument securing the loan, which fees may be collected when the loan is made or at any time thereafter. Interest, discount or charges in excess of those permitted by this Act shall not be charged, contracted for or received, and if any such shall be charged, contracted for or received, the contract of loan shall be void and the licensee shall have no right to collect or receive any principal, interest or charges whatsoever."

In the case of Automobile Security Corporation v. Randazza, 17 La. App. 489, 135 So. 45, 674, the Court of Appeal for the parish of Orleans decided that a stipulation for the payment of an attorney's fee, in a note bearing the maximum rate of interest allowed by the statute, was not forbidden by the statute; and, on the 6th of October, 1931, this court affirmed the ruling by refusing to grant a writ of review, on the ground that the judgment was correct.

In the case of Heymann v. Mathes, 18 La. App. 403, 137 So. 871, the Court of Appeal for the parish of Orleans again decided that a stipulation for the payment of the attorney's fee, in a note bearing the maximum

rate of interest allowed by the statute, was not forbidden by the statute; and, on the 1st of February, 1931, this court affirmed the ruling by refusing to grant a writ of review, on the ground that the judgment was correct.

The Court of Appeal, in the Randazza Case, analyzed the statute accurately and thoroughly, and rendered a very logical and convincing opinion that a stipulation, in a promissory note bearing the maximum rate of interest, for the payment of an attorney's fee if an attorney should have to be employed to collect the note after maturity, was not a charge for the use of the money. In so deciding, the Court of Appeal cited several cases decided by this court—particularly Race & Foster v. Bruen, 11 La. Ann. 34, in 1856, and Bacas v. Klein, 14 La. Ann. 407, in 1859—maintaining that a stipulation for the payment of an attorney's fee, in a promissory note, was not to be considered as a disguised form or method of charging usurious interest. That rule is now almost universally recognized. See note to Ann. Cas. 1917D, 366, viz.:

"The rule obtaining in the majority of jurisdictions is that a stipulation in a promissory note for the payment of attorney's fees or other costs of collection is valid. Such a stipulation is in those jurisdictions regarded as a reasonable provision for indemnity to the creditor against the expenses incident to a default on the part of the debtor.",

 In the Randazza Case the Court of Appeal observed also that the provision in the thirteenth section of the Small Loan Law, that the charging of, or contracting for, or receiving of, any interest or discount or other charge, in excess of the charges permitted by the statute, should annul the obligation and work a forfeiture of all that was loaned, was a penal clause, and therefore had to be construed literally and strictly, and not liberally against the lender. We may add that it seems quite certain that the Legislature did not intend, by the language of the thirteenth section of the statute, to forbid a licensee under the statute to protect himself by a stipulation for indemnity against the loss of any part of his loan or of the interest on it by providing that, if any such expense should be incurred by the necessity of employing an attorney to collect the note after maturity, the party whose fault or default caused the expense should bear it. The members of the Legislature knew that an attorney's fee for collecting a small loan, of $300 or less, would amount to a considerable proportion or percentage of the amount involved; and they knew that it would be impracticable to carry on the small loan business, which is done generally on shaky securities, if the lender had to bear the cost of collecting such loans. It is true that the Legislature used very comprehensive language in saying: "In addition to the interest herein provided for, no further charge or amount whatsoever for any discount, examination, service, brokerage, commission or other thing or otherwise shall be directly or indirectly charged, contracted for or received, except the lawful fees, if any, actually and necessarily paid out by the licensee to any public officer for the filing or recording or releasing in any public office any instrument securing the loan." But the very fact that the Legisla-

ture was so profuse and redundant in its use of words and synonyms, in the determination to forbid the charging of excessive interest under another name, shows that, if the Legislature had intended that the charging of attorneys' fees should be deemed a disguised form of charging excessive interest, the Legislature would have said so in terms and not by inference. The one fact that everybody has common knowledge of, these days, is that it is customary to have a stipulation for the payment of attorneys' fees in promissory notes. In fact, it is a safe estimate that 99 out of every 100 promissory notes given for a loan contain the stipulation for the payment of an attorney's fee if it becomes necessary to employ an attorney to collect the note after maturity. Hence, when we apply the cardinal rule of interpretation of laws, by trying to ascertain the intention of the Legislature that enacted the law, we do not believe that the Legislature intended—without saying—that these small loan notes should be like the one in a hundred, instead of being like the ninety-nine out of a hundred, in that respect.

It is pointed out by the defendant in this case that the Legislature made only one exception, in forbidding a licensee under the statute to charge anything more than the maximum rate of interest allowed, viz.: "Except the lawful fees, if any, actually and necessarily paid out by the licensee to any public officer for the filing or recording or releasing in any public office any instrument securing the loan, which fees may be collected when the loan is made or at any time thereafter." But it must be borne in mind that the fees paid out for filing or recording or releasing an instrument securing a loan are not contingent fees, like attorneys' fees, contingent upon a failure of the borrower to perform his part of the obligation. The fees paid for filing or recording or releasing an instrument securing a loan form a part of the necessary expense of making the loan. That is the only kind of expenses that the Legislature was concerned with, in making the exception of the charges which the lender might make, in addition to the maximum rate of interest which the statute allows, for making the loan. Attorneys' fees are not in that class of expenses, because they are not a part of the necessary expenses of making a loan; they are a part of the necessary expenses of collecting the loan, and may be avoided by the borrower's performing his obligation, to pay the loan at the time stipulated. An illustration of the difference, in that respect, between fees paid for filing or recording or releasing an instrument securing a loan, on the one hand, and an attorney's fee for collecting the loan, on the other hand, was furnished in the case of Davis Loan Co. v. Blanchard, 14 La. App. 671, 129 So. 413, 130 So. 472, where the loan company deducted the notary's fee from the amount of the loan, and the Court of Appeal for the parish of Orleans held, correctly, that the effect of the deduction was to increase the rate of interest charged, beyond the rate allowed by the statute, and, by the very terms of the statute, annulled the obligation of the borrower.

Our attention is directed to the fact that the Supreme Court of Florida, in Mason v.

City Finance Co., 151 So. 521, 523, on December 1, 1933, construed the thirteenth section of Florida's Small Loan Law (which section is substantially, if not exactly, like the thirteenth section of Louisiana's Small Loan Law) as the Court of Appeal for the parish of Orleans and this court had construed the corresponding section of the Louisiana statute in the Randazza Case and in Heymann v. Mathes; and the Supreme Court of Florida cited the Randazza Case, thus:

"Such a provision [for the payment of attorneys' fees] is therefore not a violation of section 13 of the act, since the effect of section 13 is not to prohibit agreements in small loan contracts, providing for the payment of attorney's fees, '* * * only after default, and when done merely as an incident to enforcing collection of the amounts past due at the time the property is taken possession of for that purpose. Automobile Security Corp. v. Randazza, 17 La. App. 489, 135 So. 45, 674. Compare: Davis Loan Co. v. Blanchard, 14 La. App. 671, 129 So. 413, 130 So. 472; Seaboard Security Co. v. Jones, 40 Ga. App. 710, 151 S. E. 412, and cases cited."

In Heymann v. Mathes, supra, the author of the opinion dismissed the contention of the borrower concerning the stipulation for attorney's fee, on the authority of the Randazza Case, thus:

"The writer of this opinion was not in accord with the views expressed in the Randazza Case and felt so confident of his position, that he was, for reasons given therein, impelled to dissent from the opinion of his colleagues. The matter, however, is now at rest so far as this court is concerned, since the Supreme Court, in refusing an application for review, declared the decision in that case to be correct."

The reason why the Court of Appeal, in this case, in effect, overruled the decision in the Randazza Case and in Heymann v. Mathes, is given in the opinion rendered in this case, thus:

"It was not pointed out to us—though, of course, we ourselves should have realized it—that where attorneys' fees are stipulated for in a note the fees belong to the owner of the note and not to the attorney who may make collection, and that the contract between the owner of the note and his attorney need not be in any way based on the stipulation in the note. Therefore, when a note, which already bears the maximum interest rate permissible under the law, also contains a stipulation for attorneys' fees, it cannot be said that that stipulation is solely for the necessary expense to which the owner of the note may be put in collecting it. It is in truth a stipulation for an additional charge to which he, the owner of the note, is entitled under the contract and which he may or may not, as he sees fit, pay over to the attorney." 149 So. 166, 167.

■■ Our opinion is that the premise on which the Court of Appeal concluded that its former ruling was wrong was a wrong premise. The only sense in which it can be said that the attorney's fee stipulated in a promissory note belongs to the owner of the note is that the owner of the note may sue for and recover the fee in his own name when he sues on the note. But that is only one of the many instances where a plaintiff may,

nominally, maintain an action for the benefit of another party. It cannot be assumed that a holder of a promissory note stipulating for the payment of an attorney's fee can enter into a bargain with his attorney to divide the fee to be incurred for rendering legal services in the collection of the note, unless the holder of the note is an attorney at law; in which case, if the holder of the note renders the service, he is entitled to the fee for the service so rendered. See Race & Foster v. Bruen, 11 La. Ann. 34. But no one can charge or receive a fee for services rendered by or as an attorney at law unless he is licensed to practice law. Hence an attorney at law cannot make an agreement with the holder of a promissory note to collect from the maker of the note the fee stipulated in the note and to divide it with the holder of the note, without violating the ethics of the profession, if the holder of the note is not licensed to practice law. It is so provided in Canon 34 of the Canons of Professional Ethics of the American Bar Association, which canons have been adopted as the Canons of Ethics of the Louisiana State Bar Association, viz.:

"No division of fees for legal services is proper, except with another lawyer, based upon a division of service or responsibility. But the established custom of sharing commissions at a commonly accepted rate, upon collections of commercial claims, though one be a lawyer and the other not (being a compensation for valuable services rendered by each), is not condemned hereby, where it is not prohibited by statute."

Of course, in a case where the total amount of the principal and interest and attorney's fee stipulated in a promissory note is not collectible, there is nothing unethical in an attorney's agreeing to charge his client less than the fee stipulated for suing on the note, because, in such a case, the client receives no part of the fee stipulated in the note, and the maker of the note pays none. But it is not to be believed—much less to be assumed —that an attorney at law would bargain with his client to collect a fee from a third party, for services to be rendered against that party, and allow the client to share in the fee, if the client be not also an attorney at law.

The attorney for the defendant directs our attention to the fact that in two cases, Renshaw v. Richards, 30 La. Ann. 398, and First National Bank v. Mayer, 129 La. 981, 57 So. 308, it was said or intimated that a stipulation for the payment of attorney's fees, in a promissory note, was a stipulation for the payment of liquidated damages. Whether such a stipulation should be called a stipulation for the payment of liquidated damages, or a stipulation for indemnity in the event that a default on the part of the obligor should cause the expense to be incurred, is an academic question, dealing more with the use of words than with the substance of things. It is true that the Civil Code, in article 1935, declares that the damages due for delay in the performance of an obligation to pay money are called interest, and that the creditor is entitled to these damages—interest on the debt—without proving any loss, and can recover nothing more in the way of damages, whatever loss he may have suffered by the debtor's failure to pay the debt at the time stipulated. But that definition of interest, as being "the damages due for delay in the

performance of an obligation to pay money," is not at all applicable to a stipulation for the payment of attorneys' fees incurred for the collection of the debt; because a stipulation to pay an attorney's fee for the collection of a debt, even if such a stipulation should be called a stipulation to pay liquidated damages, is not a stipulation to pay damages for delaying the payment of the debt, unless we wish to add another to the many criticisms and witticisms on the law's delay. For a debtor to compel his creditor to employ an attorney to collect the debt, at the debtor's expense, is not an assumption of liability for damages "for delay" in the payment of the debt. The employment of the attorney is to hasten—not to delay—the collection of the debt.

The Legislature has met and adjourned, once in regular session and twice in special session, since the official publication of the decision in the Randazza Case and of its affirmance in Heymann v. Mathes, and no suggestion was made, as far as we know, to amend the statute in the respect in which it was interpreted in those cases. Therefore, considering the general importance of the decisions, we assume that the judicial interpretation which was given to the statute has been regarded generally as correct. The Legislature will be in regular session again in about two months, and will then have another opportunity to amend the law if this judicial interpretation is not correct.

Our conclusion is that the defendant's exception of no cause or right of action is not

well founded. He filed at the same time an exception of vagueness, aimed at a supposed lack of specification with regard to certain payments which the plaintiff admitted in the petition were made on the note sued on. It appears that the judge of the civil district court sustained both the exception of vagueness and the exception of no cause or right of action; but the sustaining of the exception of no cause or right of action compelled a dismissal of the suit, instead of an allowance to amend the petition in the particulars in which it was said to be vague. The Court of Appeal took that view of the matter, and disposed of the exception of vagueness by saying that, if the plaintiff had a right of action, the case would have to be remanded to allow the plaintiff to amend the petition in so far as the judge of the civil district court had adjudged the allegations to be vague. It is not necessary, therefore, to remand the case to the Court of Appeal for further consideration of the plea of vagueness.

The defendant's exception of no cause or right of action is overruled, and it is ordered that the case be remanded to the civil district court for further proceedings consistent with the opinion which we have rendered.

LAND, J., dissents, as the cases cited in opinion are in his view contrary to the clear language of Act No. 7 of 1928 (Ex. Sess.)

BRUNOT, J., dissents.

ST. PAUL, J., absent.