468 So.2d 611 (1985)
Van H. BRASS, (Plaintiff-Appellee),
v.
Martha E. MINNIEWEATHER, (Defendant-Appellant).
No. 16881-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1985.
*612 Clyde Lain, II, Monroe, for defendant-appellant.
Norman L. Haymer, Jr., Baton Rouge, for plaintiff-appellee.
Before HALL, SEXTON and NORRIS, JJ.
SEXTON, Judge.
In this action to recover on a promissory note, defendant appeals an adverse judgment. We amend in part, and as amended, affirm; we reverse in part and remand thereon.
On November 25, 1980, appellee and appellant, both attorneys, entered into a lease of an office building with an option to purchase. On July 8, 1981, appellant exercised her option to purchase the property and assumed a mortgage on the property in the original amount of $36,000. On the date the assumption deed was executed, appellant paid appellee $2,500 and signed a promissory note in the amount of $17,163.44, made payable on demand or within twenty-four months. After demand for payment, plaintiff instituted this action for the balance due on the note. Appellant answered the suit alleging fraud, misrepresentation and lack of consideration. After trial, judgment was rendered against appellant for $17,163.44, the amount of the note, and for attorney's fees in the amount of twenty-five percent, as called for in the note.
Appellant initially complains that the trial court erred in allowing plaintiff, over defendant's objection, to reopen his case after the conclusion of defendant's evidence, for the sole purpose of allowing the introduction of the promissory note into evidence.
In a suit on a promissory note, the note is the foundation of the cause of action. Lindsley-Feiber Motor Company v. Brumfield, 111 So.2d 555 (La.App. 1st Cir. 1959). Therefore, the introduction into evidence of the original promissory note is the required proof. LSA-C.C. Art. 2277; Ascension Builders, Inc. v. Jumonville, 262 La. 519, 263 So.2d 875 (1972); First Homestead Federal Savings and Loan Association *613 v. Coleman, 446 So.2d 551 (La.App. 3rd Cir.1984).
The decision whether to reopen a case for production of additional evidence after all parties have rested is within the sound discretion of the trial court and, unless there has been a showing of abuse of discretion, the trial court's decision will not be disturbed on appeal. Gauthier v. Helmerich & Payne Drilling, 401 So.2d 692 (La.App. 3rd Cir.1981). We are unable to conclude that an abuse of discretion occurred.
Secondly, appellant claims that the trial court erred in awarding judgment in the amount of the face value of the note. This claim is apparently a reiteration of her trial contentions of fraud, misrepresentation, and lack of consideration.
The party asserting an affirmative defense bears the burden of proving such a defense by a preponderance of the evidence. Confederate Welding v. Bank of the Mid South, 458 So.2d 1370 (La.App. 2d Cir.1984); McDonald v. Champagne, 340 So.2d 1025 (La.App. 1st Cir.1976); Crescent Cigarette Vending Corporation v. Toca, 271 So.2d 53 (La.App. 4th Cir.1972).
Appellant alleged that she and Van Brass entered into an oral agreement to purchase the property for the total sum of $36,000. She alleged that she was to assume a mortgage in favor of the Small Business Administration (SBA) in the original amount of $36,000. Ms. Minnieweather alleged that Van Brass represented to her that he owed the SBA approximately $16,500 and would consequently be entitled to $19,000 in equity. Thereafter, the assumption deed was executed. At the same time, Ms. Minnieweather gave Brass $2,500 in cash and signed the instant promissory note for $17,163.44. Ms. Minnieweather testified that she later discovered that Brass had made no payments on the SBA loan and was in arrears in the amount of $7,392.00.
Ms. Minnieweather argues that she understood that the total consideration for the sale of the building was $36,000. The trial court rejected this contention, finding that the total consideration for the sale was $55,000.
The record before us substantiates the trial court's conclusion in this regard. Van Brass testified that the total sale price for the building was $55,000. He also testified that the true consideration for the purchase was not reflected in the assumption deed because he feared that the SBA would not approve the sale and assumption of its mortgage if the deed revealed that he was receiving further consideration. Mr. Brass stated that he furnished the appropriate SBA loan information to Minnieweather prior to the consummation of the sale.
The lease agreement itself contains an option to purchase, stating a purchase price of $55,000. Larry Jefferson, also an attorney, was a party to the original lease. He testified that he understood that the option to purchase the building was available and that the price would be $55,000.
Considering the foregoing evidence, we cannot say that appellant, an attorney, sustained her burden of proving that she was somehow fraudulently deceived by Brass with respect to this note. However, appellant testified that she paid appellant $750 on the note, and appellee admitted receipt of three monthly installments of $250. Accordingly, the judgment appealed will be amended to reflect credit for this amount.
In the final assignment, appellant contends that attorney's fees in the amount of twenty-five percent of the note are excessive. The note upon which suit was instituted provided:
FOR VALUE RECEIVED I promise to pay to the order of Van H. Brass Seventeen Thousand One Hundred Sixty Three and 44/100 Dollars with 12 per cent per annum interest from DATE [July 2, 1981] until paid and all attorney's fees incurred in the collection of this note, or any portion thereof including interest, which fees are hereby fixed at 25% per cent on the amount to be collected. Principal and interest payable as follows:

*614 Due on Demand or within 24 months of date. [Emphasis ours.]
Brass explained at trial:
[T]o give you some time to pay it, we'll give you twenty-four months, that's why we did the note due on demand or within twenty-four months, to give her an opportunity to pay the balance on the note.
During her testimony, Ms. Minnieweather agreed that the debt had matured on July 3, 1983. Amicable demand was made upon Ms. Minnieweather but payment was not forthcoming. Eventually, the note was turned over to an attorney for collection and suit was filed on August 31, 1983.
In Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982), the Supreme Court held that a court may inquire into the reasonableness of attorney's fees which have been fixed in a note by the parties as a percentage of the amount due upon default of the debtor.
This court has held that Leenerts does not limit the trial court in its determination to reduce an excessive fee provided for in a note only in a case where the issue is asserted by a defendant at trial. Rather, Leenerts provides the authority for the trial court to inquire into the reasonableness of an attorney's fee provision in a note as a matter of public policy, whether or not the issue is raised by the opposing party. Knighten v. Knighten, 447 So.2d 534 (La. App. 2d Cir.1984), writ denied, 448 So.2d 1303 (La.1984). This rationale was extended in City Bank & Trust Co. v. Hardage Corporation, 449 So.2d 1181 (La.App. 2d Cir.1984), wherein it was concluded that the policy inherent in the Leenerts decision makes a judgment obtained by default in which a fee is awarded in accordance with an attorney's fee provision in a note reviewable by an appellate court to determine if it is excessive.
However, in 1983 the Legislature amended LSA-C.C. Art. 1935, apparently in an attempt to legislatively overrule the Leenerts case. As amended, Article 1935 provides:
Art. 1935. Damages for nonpayment of money; interest; attorney fees
The damages due for delay in the performance of an obligation to pay money are called interest. The creditor is entitled to these damages without proving any loss, and whatever loss he may have suffered he can recover no more. But when the parties, by contract in writing, have expressly agreed that the debtor shall also be liable for the creditor's attorney fees in a fixed or determinable amount, the creditor is entitled to that amount as well.
This amendment became effective August 30, 1983.[1] This court has held that the amendment is substantive in nature and therefore not retroactive. City Bank and Trust Company v. Hardage Corporation, supra. Suit was instituted herein on Wednesday, August 31, 1983, one day after the amendment had taken effect. The question for our resolution is whether the defendant is entitled to the benefit of the amendment. We answer in the negative. The obligation herein was confected in 1981, prior to Leenerts and prior to the amendment. However, Leenerts tells us that a contract stipulating attorney's fees as a result of the default of an obligor that is signed before the date of that opinion but litigated thereafter is to be judged by Leenerts' statement of public policy. The substantive amendment to Article 1935 cannot retroactively affect the contractual provision entered into prior to the effective date of the amendment.[2]
The fee in this cause, which appears to be in the neighborhood of $6,000, at first glance on this record seems excessive. *615 However, we are unable to be certain on this record. As Leenerts notes, there are many factors to be considered in determining whether a fee is clearly excessive.[3] The record does not reveal whether the fee arrangement between plaintiff and his attorney is contingent, which would have a strong bearing, along with other factors, on determination of whether the fee is clearly excessive. Considering the wide variety of criteria to determine whether a fee is excessive under the rule of Leenerts, we believe the trial court is in a better position to determine what is a reasonable fee under the circumstances of this case. We therefore reverse the award of attorney's fees and remand to the trial court for an additional hearing to determine and fix the appropriate attorney's fees.
Accordingly, the judgment of the trial court is amended to reflect a credit on the note in the amount of $750, reducing the principal amount to $16,413.44. The award of attorney's fees is reversed and that portion of the cause is hereby remanded to the district court for a determination and fixing of attorney's fees in this cause in accordance with Leenerts Farms, Inc. v. Rogers, supra, and its progeny. Costs of this appeal are assessed one-third to appellee and two-thirds to appellant.
AMENDED IN PART, and AS AMENDED, AFFIRMED; REVERSED IN PART and REMANDED THEREON.
HALL, J., concurs with written reasons.
HALL, Judge, concurring.
While I am in full accord with the action taken in this case, I concur to offer thoughts regarding the effect of the legislature's 1983 amendment to LSA-C.C. Art. 1935 on the holding of Leenerts. The primary holding in Leenerts is that courts may inquire into the reasonableness of attorneys fees despite a provision in a note fixing the amount of those fees as a percentage of the amount to be collected. Our supreme court based that holding on the judiciary's duty to assert its authority, conferred by the Louisiana Constitution, to regulate the practice of law. However, the court in Leenerts also held that a note's stipulation fixing attorneys fees was not a stipulation for the payment of liquidated damages. This second holding was based on the observation that Art. 1935, as it read at that time, provided that damages due for delay in payment of money are called interest, and that the creditor is entitled to recover no more. The court further observed that the jurisprudence provided that a stipulation in a note for payment of attorneys fees was not a stipulation for the payment of the kind of damages contemplated in Art. 1935. The cases cited in support of this latter observation were Foundation Finance Co. v. Robbins, 179 La. 259, 153 So. 833 (1934), and Race and Foster v. Bruen, 11 La.Ann. 34 (1856). From the two observations noted above, the court then concluded that a stipulation for the payment of attorneys fees could not be a stipulation for the payment of liquidated damages. It would seem that in *616 order to reach that conclusion, the court must have viewed the kind of damages recoverable under Art. 1935 (interest) as the only kind of liquidated damages recoverable under those circumstances. That conclusion is difficult to follow since the two cases cited by the court, while recognizing attorneys fees as not being interest, nevertheless held the fees to be collectable. Furthermore, the court in Leenerts merely reduced attorneys fees rather than denying them.
Regardless of the propriety of the court's conclusion, the legislature apparently attempted to overrule the second holding in Leenerts by amending Art. 1935. A second sentence was added to that article in 1983 which made it clear that a provision for attorneys fees in a determined or determinable amount is a type of liquidated or stipulated damage to which a creditor is entitled. However, the amendment did not say that the creditor was so entitled even when the stipulated fees were clearly excessive. Thus, this amendment seemingly had the effect of overruling the holding that attorneys fees are not liquidated damages, while not addressing or affecting the primary holding of Leenerts that is grounded in constitutional provisions, and that is still good law. Furthermore, recognizing attorneys fees as liquidated damages does not necessarily conflict with the court's duty and power to regulate the legal profession. While it is true, as stated in Leenerts, that courts generally will not inquire as to whether actual damage equals or approximates liquidated damages, it is also true, as stated in the Expose Des Motifs of the Projet of Titles III and IV of Book III of the Louisiana Civil Code, that Louisiana courts in the past have perceived the need and have exercised the power to modify stipulated or liquidated damage clauses when such clauses have been so excessive as to be contrary to public policy. The Expose further states that this judicial prerogative is now part of our Civil Code as a new article, LSA-C.C. Art. 2012, whose main tenet is in harmony with classic civilian theory.[1] That article states:
Stipulated damages may not be modified by the court unless they are so manifestly unreasonable as to be contrary to public policy.
As the court in Leenerts noted, the Code of Professional Responsibility is "the most exacting of laws established for the public good." Thus, DR 2-106 of the Code of Professional Responsibility and Civil Code Article 2012 are both concerned with preservation of the public good; stipulated attorneys fees that are excessive are contra bonos mores when viewed either from the perspective of the parties to a contract who stipulate attorneys fees, or from the perspective of the attorneys who collect such fees. Therefore, it may well be that what is clearly or manifestly an unreasonable amount for attorneys fees under Art. 2012 is the same amount that is a clearly excessive fee under DR 2-106 of the Code of Professional Responsibility.
In any event, since the 1983 amendment to Art. 1935 did not affect the primary holding of Leenerts, courts may properly inquire into the excessiveness of attorneys fees. In the instant case, the appellant having raised on appeal the issue of excessiveness of the fee awarded and the record being insufficient to make a determination as to excessiveness, it is appropriate to remand for further evidence on that issue and a determination thereof by the trial court under the Leenerts holding.
NOTES
[1] In the revision of the Civil Code Articles on obligations, a portion of Article 1935's substance was incorporated into LSA-C.C. Art. 2000 by Act No. 331 of 1984, which became effective January 1, 1985. The new Art. 2000 makes no provision as to attorney's fees, and the comments to this article do not reflect the reason for omission of this portion of the Article.
[2] Because of this determination we do not consider the broad issue of whether the Legislature had the authority to overrule the public policy statement of Leenerts.
[3] The determining criteria for reviewing attorney's fees are found in DR2-106 which provides:

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.
[1] The revision of the civil code articles on obligations has the effect of relocating part of Art. 1935's content in new Art. 2000. However, the portion of Art. 1935 specifically addressing attorneys fees was neither included in Art. 2000 nor specifically redesignated in any other new obligation article. Nevertheless, the legislature did not specifically express any intent to change the law on attorneys fees by way of the revision, and it is logical to conclude from the reasoning expressed above that Section 5 of the revision, which addresses the subject of contractual provisions for stipulated damages, is to govern contractual provisions for stipulated attorneys fees. Such provisions serve both to initially encourage performance of the primary obligation, and to compensate the party to the contract who is damaged by the incurring of expenses for legal counsel due to the other party's non-execution of the principal obligation.