391 So.2d 570 (1980)
AMERICAN GENERAL INVESTMENT CORPORATION
v.
ST. ELMO LANDS et al.
AMERICAN GENERAL INVESTMENT CORPORATION
v.
ST. ELMO LANDS et al.
Nos. 11332, 11333.
Court of Appeal of Louisiana, Fourth Circuit.
November 12, 1980.
Rehearing Denied December 19, 1980.
Liskow & Lewis, Edward J. Gay, III, New Orleans, for St. Elmo Lands.
Thomas J. Kliebert, Gramercy, for American General Inv. Corp.
*571 Francipane, Regan & St. Peé, Chester Francipane and Richard T. Regan, Metairie, in pro. per.
Before REDMANN, GULOTTA and BARRY, JJ.
BARRY, Judge.
Plaintiff, American General Investment Corporation (American General) owned three promissory notes secured by mortgages executed by defendant, St. Elmo Lands (St. Elmo) on properties in St. James Parish. St. Elmo defaulted on the notes and American General filed two lawsuits, one via executiva and the other via ordinaria, for unpaid principal and interest of $2,272,000.00, plus costs and attorney's fees of 10% as stipulated in the notes.
A writ of seizure and sale was issued pursuant to the executory process and notice of seizure was recorded in the mortgage records of St. James Parish.
Prior to any further legal action, American General and St. Elmo began negotiating a settlement and American General directed its law firm to delay the litigation. St. Elmo, after obtaining several extensions in which to answer, advised plaintiff that it had a prospective buyer who was willing to pay a sum sufficient to satisfy American General's claim. Plaintiff in turn notified its attorneys, Francipane, Regan and St. Peé (law firm) to suspend the litigation, including the executory proceedings.
The law firm became concerned that their client might not pay the legal fees stipulated in the note, so on July 12, 1979 it executed and recorded an affidavit asserting a privilege on the property. On October 9, 1979 American General terminated the law firm and instructed it to withdraw as counsel of record and to forward its file to new counsel.
Defendant's prospective buyer, Coral Petroleum, Inc. (Coral), made an offer of approximately $2,800,000.00 which was accepted by St. Elmo and concurred in by American General and the sale was executed on September 18, 1979. The proceeds were more than sufficient to satisfy all principal, interest, attorney's fees and costs. In order to make the intentions of all three parties (American General, St. Elmo and Coral) clear, and to protect Coral's title, a Mutual Receipt, Release, Compromise and Settlement Agreement was executed between plaintiff, defendant and Coral on October 25, 1979. This document reflected St. Elmo's intent to pay in full the mortgage notes and costs, and acknowledged that a dispute existed between the law firm and St. Elmo on the amount of legal fees owed. The agreement provided that St. Elmo would indemnify American General on all claims by the law firm and $300,000.00 was placed in escrow pending a determination of the amount of attorney's fees. Two mortgage releases were recorded the same day the Settlement Agreement was executed.
On October 29, 1979 the law firm filed a motion for a contradictory hearing on the issue of its fees. On November 5, 1979 two additional motions were filed: (1) a joint motion by American General and St. Elmo to dismiss with prejudice the pending foreclosures; and (2) a motion by the law firm to intervene as a party plaintiff in the pending foreclosures.
On November 9, 1979 the law firm filed a plea of estoppel asserting American General and St. Elmo should be estopped from dismissing the lawsuits because the litigation created a stipulation pour autrui in their favor.
After a hearing on the motions the District Court rendered the following judgment:
"... the motion of the law firm of Francipane, Regan and St. Peé to join as a party plaintiff is hereby granted only insofar as it allows the said law firm to prove its right to and the extent of the attorney's fees it is entitled to receive from American General Investment Corporation and/or St. Elmo Lands for services rendered."
"... the motion of American General Investment Corporation and St. Elmo Lands to dismiss these lawsuits is hereby granted, except to the extent that the law firm of Francipane, Regan and St. *572 Peé shall be allowed in these proceedings to prove its right to and the extent of the attorney's fees it is entitled to receive from American General Investment Corporation and/or St. Elmo Lands for services rendered, the court specifically retaining jurisdiction to determine such issue upon the filing of a proper motion thereon."
"... the sheriff of St. James Parish is hereby stayed from proceeding with the judicial sale of the property as ordered by this Court in suit number 12,544" (executory process).
"... the mortgages granted to secure payment of the promissory notes sued upon in these lawsuits are hereby ordered cancelled."
The law firm appeals that portion of the judgment which ordered the mortgages cancelled. American General and St. Elmo answered the appeal asserting that the judge erred in retaining jurisdiction to determine the legal fees and in failing to unconditionally dismiss the suit and deny the law firm's attempt to join as party plaintiff.
The law firm seeks recognition of the existence of a stipulation pour autrui (itself being the third party beneficiary) created by the attorney's fee provision in the note, contending it acquired a privilege which was secured by the mortgage itself. Appellant relies on LSA-R.S. 9:5001 (privilege for attorney's fees) and LSA-R.S. 37:218 (contingency fee contracts) asserting that a special privilege for attorney's fees supports its position.
In Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979) the Supreme Court pronounced limitations on the course an attorney may properly pursue to collect his fee after discharge by a client. The Court looked to the Code of Professional Responsibility of the Louisiana State Bar Association for guidance and stated that its Disciplinary Rules are recognized as having the force and effect of substantive law. Saucier, supra, at pp. 115.
DR 5-103 provides in pertinent part:
"(A) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except that he may:
(1) Acquire a lien granted by law to secure his fee or expenses.
(2) Contract with a client for a reasonable contingent fee is a civil case."
The above rule does not create an exception against acquiring a proprietary interest. Scott v. Kemper Ins. Co., 377 So.2d 66 (La.1979) clarified the prohibition against asserting a proprietary interest in the client's claim and specifically held:
"... an attorney can neither force his continued representation of a client who wishes to discharge him, nor obtain, by any means, a proprietary or ownership interest in the client's claim. Therefore, he may not proceed with the suit or claim as if settlement had not been made. And he has no right to interfere with or nullify the settlement which his former client has made ... or chooses to make." at pp. 70 (emphasis added)
The attorney in Scott, supra, relied entirely on his contingency fee rights; however, we feel the conflict of interest which Scott seeks to prevent is equally apparent when an attorney seeks to justify an equity interest as a result of the lien provided in LSA-R.S. 9:5001.
The law firm cites Jefferson Bank and Trust Company v. Post, 312 So. 907 (La. App. 4th Cir. 1975). There the attorney completed the executory process through seizure and sale, forwarded the full amount of principal and interest to its client, and retained 25% attorney's fees as provided in the note. We held that an attorney's fee becomes due and payable whenever the obligation provided for in a note is not paid and the note is placed with an attorney for collection. Post did not involve an attempt to interfere with a client's settlement nor did the attorney attempt to become a party plaintiff while refusing to withdraw as directed.
Other cases cited by the firm are no less distinguishable. In Foundation Finance Co. v. Robbins, 153 So. 833 (La.1934) the question *573 was whether the obligation in a promissory note was enforceable because of a stipulation in the note that after default the maker would be liable for 25% attorney's fees in addition to the maximum rate of interest. The court stated in dicta that no one is entitled to attorney's fees unless licensed to practice law. This principle is not applicable here because American General has not been paid attorney's fees. Funds are in escrow pending a determination of the amount owed. It is unquestioned that after the law firm has been paid any remaining funds belong to St. Elmo.
W. K. Henderson Iron Wks. & S. Co. v. Meriweather S. Co., 152 So. 69 (La.1934) held that a stipulated attorney's fee becomes liquidated damages when the note is not paid regardless of the extent or value of the legal services. Henderson is not authority for an attorney to attempt collection of his fee directly against the debtor, especially where it could cause delay or detriment to his client's claim.
Finally, the law firm cites International Harvester Credit Corp. v. McGill, 297 So.2d 272 (La.App. 3rd Cir. 1974). A quotation from the concluding paragraph explains why that case is inapplicable here:
"We agree with the trial court's conclusion that payee is entitled to enforce the specific provision ... for attorney's fees..." International Harvester, at pp. 276. (emphasis added)
Thus, we feel it is clear that provision for attorney's fees in a mortgage note is a valid and enforceable obligation in favor of the payee. This does not create any right or cause of action in favor of the payee's attorney to intervene or interfere with the client's litigation.
In Saucier, supra, the court said a lawyer must withdraw from a case when discharged, with or without cause, and if the fee originally contracted for is excessive for the amount of work performed, the attorney must accept some lesser, more appropriate fee.
The law firm's refusal to withdraw was in violation of Disciplinary Rule 2-110:
D.R. 2-110-Withdrawal from Employment
(B) Mandatory Withdrawal-
A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment if:
. . . . .
(4) He is discharged by his client."
The record establishes that the law firm was discharged and directed to withdraw long before the joint motion to dismiss was filed.
LSA-C.C.P. Art. 1671 provides that a judgment dismissing an action shall be rendered upon application of the plaintiff and upon payment of all costs. If application is made prior to a general appearance by the defendant the action shall be dismissed without prejudice; however, if application is made after a general appearance the court may refuse to grant the judgment of dismissal except with prejudice. The Code clearly vests the plaintiff with the right to dismiss a lawsuit. The joint motion to dismiss specifically providing that each party would bear his own costs should have been granted. The law firm's assertion that the right to dismiss is qualified by its right to proceed against the defendant for recognition and payment of legal fees is clearly wrong. The trial judge committed manifest error in retaining jurisdiction once the joint motion to dismiss was filed.
This appeal does not involve the right of Francipane, Regan and St. Peé to a legal fee for their services to American General. We do conclude that they have pursued improper means in attempting recognition and payment. American General and St. Elmo acted prudently to insure that the law firm is protected and paid in an amount which can be determined amicably or by adversary proceedings. In its motion for a new trial the law firm stated it does not claim a proprietary interest in its client's cause of action, but rather a right to *574 a separate cause of action. We hold it had no legal right to join as party plaintiff in its client's action.
Accordingly, that portion of the judgment failing to dismiss this action and retaining jurisdiction for any purpose is reversed; the motion to dismiss with prejudice is hereby granted. That portion of the judgment providing for full cancellation of the two mortgages is affirmed. Costs of this appeal are to be paid by appellant.
REVERSED IN PART, AFFIRMED IN PART, RENDERED.