496 So.2d 525 (1986)
CENTRAL PROGRESSIVE BANK
v.
Sherry Wyatt, Wife of/and Sam P. BRADLEY.
No. CA 85 0834.
Court of Appeal of Louisiana, First Circuit.
October 15, 1986.
*526 Leslie Ledoux, II, Covington, for plaintiff, defendant in reconvention, appellant.
M.J. Legardeur, Jr., Covington, for defendants, appellees.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
LANIER, Judge.
This litigation commenced as an executory process by a creditor bank against immovable property of husband and wife nonresident debtors. After the property was sold with appraisement, the second mortgage holders on the property intervened in the executory process with a summary proceeding contesting the reasonableness of the attorney fee allocated to the creditor's attorneys. The intervention made the creditor, the attorneys and the sheriff parties defendant. The creditor and the attorneys filed a dilatory exception pleading the objection of prematurity contending the second mortgage was the subject of pending litigation and would not be actionable until reduced to final judgment. The creditor and attorneys also filed a peremptory exception asserting the objections of no cause of action and no right of action contending the intervenors had no cause of action under La.R.S. 9:3530 and La.C.C. art. 1935 and had no right of action because only the original debtors could contest the reasonableness of the attorney fee. After a hearing, the trial court overruled the exceptions and rendered judgment in favor of the second mortgage holders by reducing the attorney fee from $10,800 to $3,500 and ordering the balance of $7,300 *527 placed in the registry of the court pending a determination of the claim of the second mortgage holders. The creditor and its attorneys took this suspensive appeal. The second mortgage creditors answered the appeal contending the $3,500 attorney fee was excessive and requesting it be reduced to $1,500.

FACTS
On August 31, 1983, Sam P. Bradley and Sherry Wyatt Bradley, husband and wife, were owners of immovable property (house and lot) located at 187 Country Club Drive, in the City of Covington, St. Tammany Parish, Louisiana. On that date, the Bradleys executed a promissory note for $100,000 in favor of any holder or holders, which note was secured by a collateral mortgage on the property. The Central Progressive Bank (Central) of Hammond, Louisiana, acquired possession of the note.[1] The mortgage provided for an attorney fee of 25% of the amount due on the note.
Also on August 31, 1983, the Bradleys executed a second mortgage on their property in which they acknowledged they were indebted to Harold B. Cumbo and Maryrose MacNeil Cumbo, husband and wife, for $39,000. This debt was evidenced by a bearer promissory note in that amount. The mortgage provided for an attorney fee of 30% of the amount due on the note.
On May 18, 1984, Central filed a petition for executory process seeking seizure and sale of the Bradleys' property. The property was sold with appraisal by sheriff's sale on September 5, 1984, for $123,000 plus costs. On September 5, 1984, Central advised the sheriff that the payoff on its mortgage was $122,568.75. (This leaves a balance of $431.25.) On October 5, 1984, the Cumbos advised the sheriff that the payoff on their second mortgage was as follows:

Principal $39,000.00
Interest (12% from 12/1/83 to 9/5/84) 3,951.28
 ----------
Total Principal and Interest Due $42,951.28
30% Attorney's Fees 12,885.38
Court Costs 190.00
 ----------
Total Due as of September 5, 1984 $56,026.66
 ----------

On October 17, 1984, the Cumbos filed their intervention contending the attorney fee claimed by Central, "constituting approximately 10% of the interest and principal balance due," was unreasonable and adversely affected their right to recover as second mortgage holders.

OBJECTION OF PREMATURITY

(Central and its Attorneys' Assignment of Error F)
Central and its attorneys contend the "trial court erred in not requiring Appellees to judicially prove the currently contested validity and ranking of their alleged liens before sharing in any excess proceeds of a public sale." In brief, they assert the Cumbos "must first judicially prove the validity and ranking of their alluded to lien before attempting to share in any alleged excess proceeds of the public sale."
The trial court found as fact that the Bradleys were contesting the validity of the Cumbos' second mortgage in a separate suit action which had not proceeded to final judgment. However, the trial court found the Cumbos' intervention herein was not premature because the Cumbos' second mortgage on the Bradleys' property was cancelled as a result of the sheriff's sale and substantial rights of the Cumbos were affected. The trial court did not adjudicate the validity of the Cumbos' claim; it only ordered that the surplus after Central's claim is deducted from the sale price be deposited into the registry of the court for determination of the rights of the Cumbos.
Pursuant to La.C.C.P. arts. 1092 and 2643, the Cumbos had a right to intervene *528 in these proceedings to assert their second mortgage rights (whatever they were). These statutes make the procedural device of intervention available to a third person claiming a mortgage or privilege on the property; they do not require that the claim be reduced to final judgment as a condition precedent to the intervention. If a person claiming a mortgage or a privilege were precluded from intervening in an executory proceeding (which by its nature is expeditious) until the claim were reduced to final judgment, then, in most instances, as a practical matter, the executory proceeding will have been long completed when the intervention matured and the right to intervene rendered meaningless.
This assignment of error is without merit.

NO RIGHT OF ACTION TO INTERVENE

(Central and its Attorneys' Assignments of Error A and B)
Central and its attorneys contend the trial court committed error by allowing the Cumbos to contest the legality of the attorney fee and not limiting them to contesting only the ranking of the claims.
The objection of no right of action asserted in a peremptory exception raises the question of whether a remedy afforded by law can be invoked by the plaintiff (or intervenor) and determines if the plaintiff has a right or legal interest in the subject matter of the suit, that is, does the plaintiff belong to the particular class of persons to whom the law grants a remedy for the particular harm alleged? Fulford v. Green, 474 So.2d 972 (La.App. 1st Cir.1985).
The mortgage contract executed by the Bradleys in favor of any future holder of the mortgage note (Central) provided, in pertinent part, as follows:
And the said mortgagor further declared that said mortgagor does by these presents bind and obligate said mortgagor to pay and reimburse all lawyers' and attorneys' fees, together with all such costs, charges and expenses as the present or any future holder or holders of said note or notes shall or may incur or pay in the event of the non-payment of note or notes at maturity, or in case it should become necessary to place said note or notes in the hands of an attorney-at-law for collection, suit or otherwise, said attorney's fees to be fixed at 25% per cent on the amount due or so in suit.
Central subsequently contracted with its attorneys for them to prosecute this executory process for a fee of 10% of the principal and interest due on the note.
The main demand herein is an executory proceeding by Central against the Bradleys. The obligation of the Bradleys to pay to Central a contractual attorney fee flows from the Bradleys' mortgage and mortgage notes; this obligation does not flow from the contract between Central and its attorneys (to which the Bradleys were not a party). Thus, the obligation being attacked by the Cumbos is the Bradley-Central obligation, not the Central-attorneys' obligation. The attorneys are not necessary parties to such an attack, and the Cumbos have no right of action against them. Pursuant to Code of Professional Responsibility, Rule DR 5-103, an attorney may not acquire a proprietary interest in the cause of action he is conducting for a client except (1) acquire a lien granted by law or (2) contract for a reasonable contingent fee in a civil case. A provision for an attorney fee in a mortgage note creates a valid and enforceable obligation in favor of the creditor; it does not create such an obligation or result in a stipulation pour autri in favor of the attorney. American General Investment Corporation v. St. Elmo Lands, 391 So.2d 570 (La.App. 4th Cir.1980), writ denied, 395 So.2d 682 (La.1981). In addition, the Cumbos cannot add new parties in a main demand by way of an intervention. Resor v. Mouton, 200 So.2d 308 (La.App. 4th Cir.1967), overruled on other grounds in Gallin v. Travelers Insurance Company, 323 So.2d 908 (La.App. 4th Cir.1975), writ denied, 329 So.2d 452 *529 (La.1976).[2] An intervenor may only (1) join the plaintiff in seeking relief against the defendant, (2) unite with the defendant to resist the plaintiff's demand, or (3) oppose both the plaintiff and the defendant. La.C.C.P. art. 1091. This portion of these assignments of error has merit.
Since the Cumbos are not parties to the Bradleys-Central attorney fee obligation, the issue to be decided in this objection is whether the Cumbos have a right to attack the terms of that obligation when the parties to it have not. La.C.C.P. art. 1091 provides, in pertinent part, that a third person may intervene in an action "to enforce a right related to or connected with the object of the pending action." After a judicial sale, the holder of an inferior mortgage is entitled to be paid out of the sale price any surplus after the costs and the claims of superior creditors have been paid. La.C.C.P. art. 2373. Thus, the amount that the holder of the inferior mortgage can recover depends on the amount due on the superior claim. La.C.C.P. art. 1092 provides, in pertinent part, that "[a]n intervener claiming the proceeds of a judicial sale does not thereby admit judicially the validity, nor is he estopped from asserting the invalidity, of the claim of the seizing creditor." Official Revision Comment (f) for Article 1092 provides as follows:
(f) The third paragraph of this article overrules the harsh and technical rule of Albert Pick & Co. v. Stringer, 171 La. 131, 129 So. 731 (1930) and Eddy v. Weathers, 16 La.App. 634, 134 So. 259 (1931), in so far [sic] as these cases hold that a third opponent judicially admits the validity of the principal demand and is estopped to claim the proceeds of the judicial sale, when he engrafts his third opposition upon the principal demand. Cf. Bomarito v. Max Barnett Furniture Co., 177 La. 1010, 150 So. 2 (1933).
La.C.C.P. art. 1094 provides that "[a]n intervenor cannot object to the form of the action, to the venue, or to any defects and informalities personal to the original parties." Construing these codal provisions in pari materia, we conclude that, although an intervenor is precluded from raising informalities or procedural defects personal to the parties to the main demand, he is not precluded from asserting the substantive invalidity of all, or a part, of the claim of the seizing creditor (such as Central). This portion of these assignments of error is without merit.

OBJECTION OF NO CAUSE OF ACTION

(Central and its Attorneys' Assignments of Error C, D and E)
Central and its attorneys contend the 25% attorney fee is authorized by La.R.S. 9:3530 and that the Cumbos have no cause of action to contest the validity of the attorney fee because of the retrospective application of La.C.C. art. 1935, as amended by Act 483 of 1983, and La.C.C. art. 2000, as amended by Act 137 of 1985.
The objection of no cause of action asserted in a peremptory exception tests the legal sufficiency of the petition and all the allegations of the petition are accepted as true; an objection of no cause of action is sustained only where the law affords no remedy to plaintiff under the allegations of his petition. If a petition states a cause of action on any ground or portion of the demand, the objection of no cause of action must be overruled. McGowan v. Ramey, 484 So.2d 785 (La.App. 1st Cir.1986).
La.R.S. 9:3530 is part of the Louisiana Consumer Credit Law, La.R.S. 9:3510 et seq., and provides that "[a]ny consumer credit transaction agreement may provide for the payment by the consumer of attorney's fees not in excess of twenty-five per cent of the unpaid debt after default and referral to an attorney for collection."
La. Const. of 1974, art. V, § 5(B) provides that "[t]he supreme court has exclusive original jurisdiction of disciplinary proceedings against a member of the bar." In Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102, 115 (La.1979), this constitutional *530 provision was interpreted by a majority of the Court as follows:
In deciding this case we recognize as a primary consideration the Court's duty to assert the authority conferred by the Constitution to regulate the practice of law, which stems from the grant of original exclusive jurisdiction of disciplinary proceedings against a member of the bar. La. Const. Art. V, § 5(B); see Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La.1976). As set forth more fully in the dissent on original hearing, this Court's prevailing judicial authority resulted in the adoption and promulgation of the Articles of Incorporation of the Louisiana State Bar Association, which Articles came to incorporate the Code of Professional Responsibility, in lieu of the Canons of Professional Ethics. The Code of Professional Responsibility which regulates attorneys' practices has been recognized as having the force and effect of substantive law. As a result, these rules set forth by virtue of the Court's exercise of its prevailing judicial authority override legislative acts which tend to impede or frustrate that authority; only legislative enactments in this area which aid the Court's inherent powers will be approved.
[Bolding added.]
In Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982), a debtor attacked the reasonableness of an attorney fee in a promissory note held by a mortgage creditor. The creditor filed a peremptory exception pleading the objection of no cause of action relying on prevailing jurisprudence that a stipulation for an attorney fee in an obligation was a stipulation for liquidated damages, and where parties agree to liquidated damages, the courts will not inquire whether the actual damage suffered equaled or approximated the agreed upon amount. The trial court sustained the exception, and this court affirmed. The Louisiana Supreme Court held a stipulation for an attorney fee was not a liquidated damage pursuant to La.C.C. art. 1935, overruled the prior jurisprudence, found the courts could inquire into the reasonableness of the fee and overruled the exception. The Court in Leenerts Farms, Inc., 421 So.2d at 219, reasoned as follows:
This court has a duty to assert the authority conferred on it by our state constitution to regulate the practice of law. This court's prevailing judicial authority resulted in the adoption and promulgation of the Articles of Incorporation of the Louisiana State Bar Association, which Articles came to incorporate the Code of Professional Responsibility. The Code of Professional Responsibility which regulates attorneys' practices has been recognized as having the force and effect of substantive law.
* * * * * *
Individuals cannot by their conventions, derogate from the force of laws made for the preservation of public good or good morals. La.Civ.Code art. 11. We view the Code of Professional Responsibility as being the most exacting of laws established for the public good. Hence, the prohibition against a lawyer collecting a `clearly excessive fee' cannot be abrogated by a provision in a note fixing the amount of attorney fees as a percentage of the amount to be collected. Therefore, despite such a provision, courts may inquire into the reasonableness of the fee. [Footnote deleted.]
See the analysis of this rationale in W. Mengis, Developments in the Law,1982-1983: Professional Responsibility, 44 La.L.Rev. 489 (1983) and P. Dye, Attorney Fees Provisions and Promissory Notes, 44 La.L.Rev. 831 (1984).
Prior to Leenerts Farms, Inc., La.C.C. art. 1935 provided as follows:

Interest as damages for non-payment of money
Art. 1935. The damages due for delay in the performance of an obligation to pay money are called interest. The creditor is entitled to these damages without proving any loss, and whatever loss he may have suffered he can recover no more.
*531 By Act 483 of 1983, La.C.C. art. 1935 was amended, effective August 30, 1983, to provide as follows:
Art. 1935. Damages for nonpayment of money; interest; attorney fees
The damages due for delay in the performance of an obligation to pay money are called interest. The creditor is entitled to these damages without proving any loss, and whatever loss he may have suffered he can recover no more. But where the parties, by contract in writing, have expressly agreed that the debtor shall also be liable for the creditor's attorney fees in a fixed or determinable amount, the creditor is entitled to that amount as well.
This amendment apparently was an attempt to legislatively overrule the Leenerts Farms case. Brass v. Minnieweather, 468 So.2d 611 (La.App. 2nd Cir.1985). Since suit was not filed herein until May 18, 1984, this amendment could be applicable to the instant case. Graham v. Sequoya Corporation, 478 So.2d 1223 (La.1985).
Effective January 1, 1985, Article 1935 was replaced by La.C.C. art. 2000 pursuant to Act 331 of 1984. Article 2000 provided as follows:
Damages for delay measured by interest; no need of proof
When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the legal rate in effect at the time it is due. The obligee may recover these damages without having to prove any loss.
The judgment in the trial court herein was rendered on February 12, 1985. The reasons for judgment provided, in pertinent part, as follows:
Actually, it is not dispositive of the issue presented this Court to determine whether the recently enacted Article 2000 changed the law as represented in Article 1935 of the Louisiana Revised Civil Code. Louisiana courts have looked past Article 1935 of the Civil Code when presented questions of whether or not a legal fee is justifiable.
Whether an attorney fee is reasonable has been determined by the Louisiana Supreme Court to be governed by the Code of Professional Responsibility. Leenerts Farms, Inc. v. Rogers, supra. It is well established that the final authority to regulate the practice of law is vested in the Louisiana Supreme Court and not in the Legislature. Singer Hutner Levine Seeman & Stuart v. Louisiana State Bar Association, 378 So.2d 423 (1979). The rules set forth in the Code of Professional Responsibility override legislative acts which tend to impede or frustrate these rules. Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (1979). Therefore, it is proper for this Court to determine whether the attorney fees are reasonable under the Code of Professional Responsibility.
Pursuant to Act 137 of 1985, Article 2000 was amended, effective with the signature of the Governor on July 3, 1985, to provide as follows:
Art. 2000. Damages for delay measured by interest; no need of proof; attorney fees
When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of twelve percent per annum. The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more. If the parties, by written contract, have expressly agreed that the obligor shall also be liable for the obligee's attorney fees in a fixed or determinable amount, the obligee is entitled to that amount as well.
Section 2 of Act 137 further provides as follows:
Section 2. The provisions of this Act are remedial and shall be applied retrospectively and prospectively to any delay in performance of an obligation which *532 has as its object a sum of money, arising prior to, on, or after the effective date of this Act.
The legislative history of Act 137 of 1985 indicates that it also was intended to legislatively overrule Leenerts Farms.
It is clear from Saucier and Leenerts Farms that the Louisiana Supreme Court has interpreted La. Const. of 1974, art. V, § 5(B) as giving it constitutional authority to regulate the practice of law and that legislative acts which impede or frustrate that authority are unconstitutional. In Code of Professional Responsibility, Rule DR 2-106, attorneys are prohibited from entering into contracts with clients which provide for excessive fees. Conversely, the Louisiana Supreme Court does not have constitutional authority to control contractual agreements between nonattorney parties; this power is vested in the legislative branch of State government.[3]
As previously indicated, the contractual provisions at issue are the attorney fee provisions of the Central-Bradleys' mortgage, collateral mortgage note and hand note. The validity of the Central-attorneys' contract cannot properly be raised herein by way of intervention. It appears clear from Article 2000 (as amended by Act 137 of 1985), DR 5-103 and the St. Elmo Lands case that the attorney fee stipulated to in the Central-Bradleys' mortgage and notes is owned by and belongs to Central (the creditor-obligee-payee); it is not owned by Central's attorneys. Article 2000, as amended, provides that "the obligee is entitled to that amount." DR 5-103 prohibits Central's attorneys from acquiring a proprietary interest in the obligation sued upon. The St. Elmo Lands case holds in 391 So.2d at 573 that a "provision for attorney's fees in a mortgage note is a valid and enforceable obligation in favor of the payee" and "does not create any right or cause of action in favor of the payee's attorney." A contractual agreement between nonattorneys for payment of a stipulated attorney fee can be justified either as a penalty provision designed to force performance of the primary obligation by threat of imposition or as stipulated damages for expenses incurred by the creditor, or both.[4] P. Dye, supra, 838-839. Thus, the contested obligation herein is one between nonattorneys and is subject to control by the legislative branch of government, not the Louisiana Supreme Court.[5]
In La.R.S. 9:3530, the legislature has provided that a consumer credit transaction agreement can provide for an attorney fee not in excess of 25%. The Cumbos do not contest that the Central-Bradleys' mortgage is a consumer credit transaction agreement. This statute is a statement of public policy by the legislative branch of government relating to such obligations between creditors and consumer debtors. Because this statute only refers to "consumer credit transaction" agreements, it does not purport to control and/or regulate a fee contract for services between an attorney *533 and a creditor, or any other client. An agreement between the attorney and the creditor is a separate obligation, as in the instant case. The fact that the creditor chooses to waive a portion of his attorney fee claim under the creditor-debtor (Central-Bradleys) obligation and accept a lesser amount in satisfaction of the claim (such as the amount actually charged by the creditor's attorney) does not affect the validity of the creditor-debtor obligation.
Code of Professional Responsibility, Rule DR 2-106 is not applicable to the contested obligation in the factual and legal posture of this case. The trial court committed error by applying DR 2-106 and overruling the objection of no cause of action pled in the peremptory exception.
This assignment of error has merit.[6]

CORRECT AMOUNT OF ATTORNEY FEE
The trial court's reasons for judgment and judgment indicate that it found $10,800 was allocated in satisfaction of Central's attorney fee claim against the Bradleys. This sum is not correct.
The sheriff's deed filed in the record shows that the Bradleys' property was sold for $123,000 plus costs. At the trial of the rule herein, Leslie E. Ledoux, II, one of the attorneys for Central, testified his firm agreed to handle this executory process for 10% of the principal and interest due and that the firm's fee would be approximately $10,800. Milton M. Cox, Vice President and Senior Loan Officer for Central, testified the attorneys agreed to handle this case for 10% of the principal and interest collected, the total amount of principal and interest due on the date of the sheriff's sale was $110,925.75, and Central advanced $335 for costs and $200 for appraisal fees. In Cumbo Exhibit No. 2, there is a letter from Central's attorneys to the sheriff indicating the sum of $122,568.75 is the payoff on Central's mortgage. This amount is not itemized in the letter. This sum would leave a balance of $431.25 for the Cumbos.
With principal and interest of $110,925.75, the 10% attorney fee should have been $11,092.58, for a total of $122,018.33. This would have left a balance of $981.67. If the sum of $10,800 had been used, the total of principal, interest and attorney fee would be $121,725.75, and the balance would be $1,274.25. Since the costs were paid by the purchaser as part of the sale price, it would appear that Central would be reimbursed the advance court costs and appraisal fees out of the costs collected from the purchaser by the sheriff, not from the $123,000 portion of the bid. If these costs were deducted from the $123,000 portion of the purchase price, the balance would have been either $446.67 or $739.25. It appears the balance due after Central is paid has not been correctly calculated.

DECREE
For the foregoing reasons, the judgments of the trial court overruling the dilatory exception pleading the objection of prematurity and the peremptory exception pleading the objection of no right of action are affirmed. The judgment overruling the peremptory exception pleading the objection of no cause of action is reversed, that exception is sustained, and the Cumbos' intervention against Central and the Bradleys is dismissed insofar as it contests the reasonableness of the attorney fee stipulated in the Central-Bradleys' mortgage and notes. This case is remanded to the trial court for an evidentiary hearing to precisely determine the amount of attorney fee claimed by Central pursuant to the letter of their attorney dated September 5, 1984. Any balance remaining after the Central claim has been precisely determined and paid shall be placed in the registry of the trial court pending further orders of the trial court. The Cumbos are cast for all costs arising from their intervention.
*534 AFFIRMED IN PART; REVERSED IN PART; REMANDED IN PART.
NOTES
[1] The mortgage shows that any holder or holders were represented in the mortgage by Pamela R. Sharp. The collateral mortgage note is payable at the Central Progressive Bank in Hammond, Louisiana. The collateral mortgage note provides "in the event this note is not paid at its maturity and is placed in the hands of an attorney-at-law for collection, or is sued on, twenty-five per cent, additional on the amount of both principal and interest as attorney's fees." The hand note provides "I will pay your reasonable attorney's fees not in excess of 25% of the unpaid debt after default and referral to an attorney for collection, or suit."
[2] The sheriff did not object to being a party defendant in the intervention.
[3] La. Const. of 1974, art. III, § 1.
[4] See La.C.C. art. 2117 et seq. for law prior to Act 331 of 1984 effective January 1, 1985. Present law is contained in La.C.C. art. 2005 et seq. Comment (b) under La.C.C. art. 2005 provides as follows:

(b) This Section effects a change in terminology in an attempt to make a fresh start in this area. The expression `penal clause' used in the source Article is deficient for two reasons. First, it is semantically awkward. Second, it resounds with overtones of `penalty,' thus introducing doubt as to whether such a thing exists in the Louisiana system. The expression `stipulated damages' is more neutral, and it is not unknown to the Louisiana jurisprudence. See White v. Rimmer & Garrett, Inc., 328 So.2d 686 (La.App. 3rd Cir.1976). Although it is similar to the common law `liquidated damages,' it is not of such common usage in either the civil or the common law tradition as to impart any definite doctrinal meaning of its own. Its meaning in this revision is governed by this and the following Articles.
[5] Because the obligation at issue herein is between nonattorneys, it is not necessary to determine the constitutionality of Act 137 of 1985 or La.R.S. 9:3530. Because the obligation here in question does not involve an attorney, it would appear that the name attorney fee is a misnomer. Perhaps, it would be better to call this obligation a penalty, stipulated damage and/or litigation expense.
[6] Because of our disposition of this assignment of error, it is unnecessary to pass on the Cumbos' assignment of error concerning the reasonableness of the fee.