506 So.2d 542 (1987)
Louis HARRIS, Jr.
v.
Melvin L. STEELE, et al.
No. CA 85 1482.
Court of Appeal of Louisiana, First Circuit.
March 4, 1987.
Rehearing Denied May 6, 1987.
*543 David L. Dawson, Etta Kay Hearn, Baton Rouge, for plaintiff-appellee Louis Harris Jr.
Alfred E. Mitchell, Plaquemine, for defendant-appellants Melvin S. Steele, Dorothy C. Steele.
Before EDWARDS, WATKINS and LeBLANC, JJ.
LeBLANC, Judge.

FACTS
This litigation centers around an Act of Sale dated April 30, 1982, in which Louis Harris, Jr. sold Melvin L. Steele two tracts of land for $77,500.00
On June 22, 1982, suit was filed by Louis Harris, Jr. against Melvin and Dorothy Steele to set aside the sale on the grounds that Harris did not have the mental capacity necessary to enter into a valid contract and further that the consideration recited in the sale was never paid.
On August 29, 1985, judgment was rendered in favor of Louis Harris, Jr. by the 18th Judicial District Court decreeing the sale invalid.
The defendants appeal urging for the first time the peremptory exceptions of no cause of action and no right of action. In addition, the defendants raise three specifications of error on appeal.

NO CAUSE OF ACTION
Appellants have filed an exception of no cause of action alleging that Mr. Harris did not have the legal capacity to proceed against them; therefore, there was no legitimate cause of action brought against them.
Under La.Code Civ.P. art. 2163, an appellate court may consider a peremptory exception filed for the first time on appeal if plead prior to the submission of the case for decision, and if proof of the grounds of the exception appears on the record. Since both of these requirements have been fulfilled, this Court will hear the peremptory exceptions as filed.
The objection of no cause of action asserted in a peremptory exception tests the legal sufficiency of the petition and all allegations of the petition are accepted as true. An objection of no cause of action is sustained only when the law affords no remedy to plaintiff under the allegations of his petition. If a petition states a cause of action on any ground or portion of the demand, the objection of no cause of action must be overruled. Central Progressive Bank v. Bradley, 496 So.2d 525 (La.App. 1st Cir.1986).
The plaintiff's petition alleges that:
(1) On or about April 30, 1982, Louis Harris, Jr. sold two tracts of land by cash sale to Melvin Steele.
(2) Louis Harris, Jr. was allegedly paid $77,500.00 for both tracts of land wherein in truth, Louis Harris, Jr. only received $17,000.00
(3) The sales should be declared null and void and set aside because of a failure of consideration.
(4) Petitioner does not have the mental capacity to be able to enter into a *544 contract and therefore the sale should be declared null and void.
At the time of filing the petition, plaintiff had not been formally interdicted; therefore, he was the proper party to bring the suit. Lack of procedural capacity is a dilatory exception which was waived by the defendants when they failed to assert it prior to answer. La.Code Civ.P. art. 928. Bordelon v. Safeway Ins. Co., 380 So.2d 1379 (La.App. 3rd Cir.) writ denied, 384 So.2d 799 (La.1980).
The petition alleges that a contract for the sale of land was entered into between Louis Harris Jr. and Melvin Steele and Steele failed to fulfill his obligation to pay the price agreed upon. Obviously, Harris alleges facts which, if true, constitute a particular grievance for which the law affords a remedy. A. Copeland Enterprises Inc. v. R. Jones Enterprise Inc., 433 So.2d 1066 (La.App. 5th Cir.1982), cert. denied, 435 So.2d 426 (La.1983).
Since the petition states a cause of action against the appellants, the peremptory exception of no cause of action must be overruled.

NO RIGHT OF ACTION
Appellants contend in their exception of no right of action that Mary Harris Butler did not have the legal capacity to proceed against them.
The objection of no right of action asserted in a peremptory exception raises the question of whether a remedy afforded by law can be invoked by the plaintiff and determine if the plaintiff has a right or legal interest in the subject matter of the suit. The question becomes whether this plaintiff belongs to the particular class of persons to whom the law grants a remedy for the particular harm alleged. Central Progressive Bank, supra.
The facts of this case indicate that on June 18, 1982, a petition for the interdiction of Louis Harris, Jr. was filed in the 18th Judicial District Court, Parish of Iberville. On June 22, 1982, Mr. Harris filed the present suit against Melvin and Dorothy Steele. Louis Harris Jr. was formally interdicted by a judgment rendered on September 10, 1982. At this time, Mary Harris Butler was named as curatrix for Mr. Harris. On January 24, 1983, an order was signed substituting Ms. Butler as proper party plaintiff in the present lawsuit.
On August 16, 1983, Louis Harris, Jr. died. Mary Harris Butler was named executrix of Louis Harris, Jr.'s succession of August 30, 1983. On October 21, 1983, Ms. Butler was substituted as proper party plaintiff in this lawsuit as executrix of Mr. Harris' succession. Appellants attempt to challenge the appointment of Mary Harris Butler as curatrix and as succession executrix in these proceedings. Since the judgments appointing Mary Harris Butler were signed without objection by any interested party, this Court will not allow the defendants to collaterally challenge the judgments of the other proceedings in an effort to invalidate the appointment of Ms. Butler as curatrix and executrix.
Under La.Code Civ.P. art. 684, a mental incompetent does not have the procedural capacity to sue. Once the judgment of interdiction was signed on September 10, 1982, the proper party to continue the lawsuit was the court appointed curatrix, Mary Harris Butler. The motion to substitute Mary Harris Butler as proper party plaintiff was signed on January 24, 1983.
Likewise, the proper party plaintiff to enforce the rights of a deceased person, is the succession representative. La.Code Civ.P. art 685. Upon the death of Louis P. Harris, Jr., the court appointed Mary Harris Butler as executrix and signed a motion substituting her, as executrix, as proper party plaintiff in the present lawsuit.
For these reasons, the only person who had a right to continue the lawsuit on behalf of Louis Harris, Jr. was Mary Harris Butler; therefore, the exception of no right of action is overruled.

SPECIFICATION OF ERRORS

Assignment of Error No. 1
Appellant contends that the court erred when it allowed parol evidence to be introduced *545 to alter the terms of the written document in authentic form.
Appellant's counsel did not object to the admission of testimony regarding the non-payment of consideration; therefore, under the basic evidentiary rule that everything not excluded is admitted, all the parol testimony was properly allowed into the record and considered by the trial court. Wade v. Joffrion, 387 So.2d 1265 (La.App. 1st Cir.1980).

Assignment of Errors No. 2 and 3
By these assignments, appellant contends that the trial court erred when it decided that the appellants were aware of the appellee's mental condition and that appellants failed to pay sufficient and adequate consideration.
Factual conclusions of the trier of fact are entitled to great weight and should not be disturbed upon review in absence of manifest error, especially when they are based upon the evaluation of credibility of opposing witnesses. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Percy v. Perkins, 468 So.2d 815 (La.App. 1st Cir.) writ denied, 475 So.2d 355 (La.1985).
After a complete review of the record, we conclude that the trial court's determinations of fact were not clearly wrong. Accordingly, we adopt the trial court's written reasons for judgment.
For the above assigned reasons, the judgment of the trial court is affirmed, at appellant's cost.
AFFIRMED.

REASONS
This Court has refrained from rendering a decision in this case out of deference for defense counsel who suffered serious injuries as the result of an accident and was unable to file a brief. However, counsel has been back in his office for several months and his brief has not yet been filed. The Court has decided to proceed with the consideration of the case without benefit of the defendant's brief.
Louis Harris, Jr. sold property to defendant, Melvin L. Steele. The purpose of this suit is to rescind the sale because of the alleged incapacity of the vendor to contract.
Contracts must be entered into with the full and free consent of the parties. Mentally incompetent persons may be deemed to have no capacity to contract because they are supposed not to be capable of consent. In the case of interdicts, contracts of sale may only be made by their curators in accordance with the procedures and provisions provided by statute. In the case of non-interdicted persons the burden is on the party attacking the sale to prove that the mentally deficient person was so incompetent as to be incapable of consenting to the contract and the incapacity must have been notorious.
In the present case there is no doubt, in the Court's opinion, that Louis Harris, Jr. was notoriously incapable of contracting, selling property, or giving a receipt, and Melvin L. Steele was aware of the incapacity.
The sale must be annulled. Consequently, the purchase price that was paid must be returned and the question remains as to how much was actually paid. The testimony in this regard suggests a rather bizarre and doubtful web of transactions involving the transfer and/or loan of large sums of money in cash without any evidence of indebtedness and without written receipts.
The testimony of the defendant, Melvin Steele, is characterized by inaccuracies and self-contradiction. Furthermore, he testified concerning his removal of some cash from his safety deposit box, while bank records showed he had not entered his deposit box since August 11, 1981 some eight months prior to the transaction. This Court is of the opinion his testimony cannot be relied upon.
Although defendants' own witnesses state that the seller was determined to receive cash for the transaction, the seller did not leave the attorney-notary's office on April 30, 1982 with the cash price. Indeed, Steele admitted he did not have the full purchase price in cash at the time and *546 that he gave the seller a check for $60,000 and one for $17,500. Mrs. Tillman, an employee of the notary, testified that Mr. Steele wrote out two personal checks, one for $60,000 and one for $17,500. He gave them to her and she gave them to Mr. Harris. However, this testimony is incorrect because the $17,500 check was a cashier's check issued later. According to Mrs. Tillman, Mr. Steele recovered the cash from Mr. Harris when he wrote the checks and put the cash in his own pocket. Mr. Steele testified that after the sale he had Mr. Harris endorse the check and he gave Mr. Harris $60,000 cash for it. There were no witnesses to this transaction.
Mr. Steele testified concerning the source of the $60,000. He said he got $15,000 cash as a loan from his uncle in Virginia through the mail in a box with a Virginia ham. He borrowed $15,000 from Clarence Ellis. This loan was corroborated by Mr. Ellis who said he had been repaid. There was, however, no note or other evidence of indebtedness. Mr. and Mrs. Steele borrowed $7,576.35 from the Iberville Federal Credit Union according to Mr. Ellis. Mr. Steele said he got the balance ($22,423.65) from cash he had in his house and his safety deposit box. (As previously stated, Mr. Steele had not entered his bank box for about eight months prior to the date in question.)
Miss Laurie Rockforte, an employee of the Guaranty Bank of Livonia, testified that Mr. Steele and Mr. Harris went to the bank on May 3, 1982. Mr. Steele did all the talking. He presented her with a cashier's check from the Bank of Maringouin for $17,500 made payable to Louis Harris, Jr. with the remitter listed as Melvin Steele. Mr. Steele told her to deposit $6800 to a regular savings account, $10,000 to a 6-month money market certificate and the balance of $700 was paid to Mr. Harris in cash.
Thus it has been established that Mr. Harris did receive $17,500 of the purchase price, of which amount he retained $700 in cash. (Note: Considering that Mr. Steele contends Mr. Harris already had $60,000 in cash which Mr. Steele avers he gave Mr. Harris, there is no explanation for Mr. Harris's insistence on retaining $700 cash from the proceeds of the cashier's check.)
Although Mr. Steele said that the loan from the Iberville Federal Credit Union was used as part of the purchase price, according to Mr. Ellis that loan was not made until almost one week after the transaction.
In the opinion of the Court, the defendant has failed to prove that he paid the seller any cash. The endorsement of the $60,000 check is not probative. We have no idea whether the seller knew what he was signing. He was not mentally capable of giving a receipt by endorsement or otherwise.
For these reasons there will be judgment for the plaintiff and against the defendant ordering rescission of the sale and a return of the purchase price paid, to wit: $17,500.
Port Allen, Louisiana, the 19th day of August, 1985.
 Ian W. Claiborne
 Judge.