WICKER, Judge.
Gregory Anderson appeals a judgment in favor of Tham Thi Pham on her suit as holder of his promissory note. The issues are Anderson’s alleged affirmative defenses and the award of attorney’s fees and interest. We affirm in part, reverse in part, revise in part, and remand in part.
Anderson owned and operated a grocery store on premises leased, with an option to buy, from the Zar family. Contrary to the lease which forbade subleasing, Anderson sold the business to and entered into a lease with Pham. Zar discovered the sublease, and she threatened to evict Pham and terminate Anderson’s lease and option.
Anderson repurchased the business from Pham for $25,000.00 more than he’d sold it for, and he gave Pham a $20,000.00 promissory note as part of the consideration. Anderson failed to pay as agreed, and Pham sued.
The judge awarded Pham the face amount of the note, contractual interest of seven percent from the date of the note *172 until suit was filed, judicial interest from the filing date until paid, and contractual attorney’s fees of thirty-three-and-a-third percent. In his reasons, the judge stated that he felt neither party was truthful in testifying to monthly sales of $5,000.00. He further felt that the value of the inventory on resale from Anderson to Pham was not really an issue, since Anderson didn’t bother to have an independent inventory done prior to his repurchase of the store. “The Court finds that it was an arms length agreement and that the note is for valid consideration.”
Anderson complains of five alleged errors: (1) failing to accept evidence regarding the description, quantity and value of the stock in trade actually transferred between the parties; (2) denying him the right to present evidence relating to the issues of the failure of consideration and setoff or compensation; (3) failing to award a reduction in the amount of $14,568.56 [the alleged discrepancy in the inventory] against the promissory note; (4) awarding interest in excess of seven percent of the principal amount due upon the promissory note; and (5) awarding attorney’s fees based upon the percentage set forth in the promissory note.
AFFIRMATIVE DEFENSES
Anderson sold to Pham the business known as Greg’s Food Mart for $55,000.00 cash, including fixtures and not less than $15,000.00 stock in trade. An independent inventory was done prior to the sale and resulted in transfer of $24,568.56 of inventory, several thousand dollars more than the minimum $15,000.00 contracted for by Pham.
Pham sold the business, now known as Tammy’s Food Mart, back to Anderson for $80,000.00 on October 6, 1987. This sale also included store fixtures and not less than $15,000.00 in stock in trade. No inventory was done at the time of this second transfer, and Anderson alleged that only $10,000.00 of inventory was present in the store when he took it back. This alleged shortage of $14,568.56 forms the basis for Anderson’s defenses of failure of consideration and setoff.
Pham, through an interpreter, testified that she operated the store for three weeks between its sale to her and her resale back to Anderson. Anderson paid her $60,-000.00 to repurchase the store and gave her a note for $20,000.00, no part of which was ever paid. She didn’t do an inventory of the stock at the time of the resale and didn’t remember the value of the stock. During her period of operation, she purchased $46,732.26 in new stock for the store. She also testified that her sales for that same period were $8,821.00. She had invoices documenting her purchases but no cash register receipts documenting her sales. She kept all the inventory at the store premises and never removed any other than by sale to her customers. She did, however, once return some damaged merchandise to the Coca-Cola Company documented by a credit memo. On cross-examination and in explanation of some discrepancies between her testimony and a prior deposition, she stated that at the time of the deposition she testified without the benefit of an interpreter. She admitted that she hadn’t any idea of how much inventory was in the store when she sold it.
Danny Frank Brown, an inventory taker, testified on behalf of Anderson that he had . done the original inventory for purposes of the sale from Anderson to Pham. [On proffer, he testified that of the original inventory, about $4,000.00 was represented by a truck full of Coca-Cola which was not located in the store.] The trial judge would not let him express an opinion on whether or not, if the store had $24,000.00 worth of inventory at the time of the sale, and if Pham added $46,000.00 in inventory during the three week period and sold about $8,800.00, $61,000.00 of inventory would have remained in the store.
Iona Ball, credit manager for Quaglino Tobacco and Candy Company, testified concerning credit records of Tammy’s Food Mart. There were $1,738.25 in credit memos in Pham’s favor, representing merchandise returned to Quaglino and credited to Pham. Pham stipulated that the value of merchandise purchased from Quaglino *173 should be reduced by the amount of the credit memos.
Julie Hernandez worked for Pham and later for Anderson as a cashier. She was questioned concerning the amount of inventory that was in the store for the three weeks that Pham owned it. Anderson argued Hernandez’ competency to testify whether the inventory had increased during that three-week period as Pham had testified. The judge refused to accept the testimony of a cashier to prove the value of the stock. [On proffer, Hernandez testified, “There wasn’t as much in the store when Mr. Anderson bought it back as there was when I first started working there.” She estimated that there was less than half left in the store at the time of the repurchase. Again, she was asked to estimate how much income the store took in; and, on proffer, she opined that the store took in about $2,000.00 per day. She believed that the receipts testified to by Pham were incorrect. On cross examination, she admitted that she worked only part of the time the store was open each day and that she had nothing to do with stocking the shelves. She also testified, on proffer, that she worked for Anderson after the repurchase and that he was taking in between $3,000.00 and $4,000.00 per day and that it “started getting busy after he came back.”]
Anderson testified that he offered Pham the amount of cash for which she had purchased the business, $55-,000.00, plus another $5,000.00 on the repurchase; and Pham agreed to that price. [However, according to Anderson’s testimony on proffer, at the act of sale Pham demanded $80,000,00. Since he was under a great deal of pressure at the time, he agreed to sign a $20,-000.00 promissory note thinking he had no choice.] Anderson’s testimony that he expected he would be getting more stock than he sold for the $20,000.00 was objected to, and the objection was sustained. He stated he got back only around $10,000.00 in inventory at the repurchase. The Coca-Cola truck was gone and the stock inside the store was way down, with the shelves half empty. $4,000.00 or $5,000.00 of the original inventory was represented by the Coca-Cola truck. The $15,000.00 figure in both sale documents referred to retail and not wholesale price of the inventory. He further testified he would not have signed the $20,000.00 promissory note had he known the condition of the inventory. On cross examination, he admitted he was in the store the day before the resale and saw the inventory. He testified that the $5,000.00 he paid over and above the selling cost was to reimburse Pham for her expenses. He also admitted that, after taking over the store, he never complained about the amount of inventory. His gross sales prior to the sale were about $30,-000.00 per month. He had represented to Pham that her sales would be around $5,000.00 to $6,000.00 per month. He paid the sales taxes while Pham had the store based upon an estimate made by his bookkeeper. Hernandez’ testimony that Pham was taking in $2,000.00 per day and that he was taking in $4,000.00 per day was not accurate. He admitted that he’d never seen Pham taking inventory out of the store. He also admitted that in his deposition he stated that one of the reasons he hadn’t paid the note was that Pham was now in competition with him at his new store.
The judge refused to take any testimony concerning the inventory except that it was not less than $15,000.00. He felt anything else was irrelevant since “If there was less than $15,000.00, then I think your client [Anderson] would be entitled to a setoff for that amount. But I don’t think I can allow any testimony about how much was there above fifteen thousand. If there is more than $15,000.00, then he gets the benefit of it.”
One issue before us is the determination of whether the language “not less than $15,000.00 of stock in trade”, which appears both in the sale and resale documents, is ambiguous. The judge held that it was not and he excluded parol evidence offered by Anderson to explain what he thought he was repurchasing. We do not believe that the judge erred in this respect. The meaning of the contract is clear to us, as it was to the judge. We will not seek to *174 modify or explain it by means of parol evidence. Breaux v. May, 392 So.2d 1089 (La.App. 3rd Cir.1981). The parties chose this language for both documents and, if they had wished, could have been more specific. We believe that the judge was correct in his conclusion that the language meant a minimum of $15,000.00 in inventory, based upon the normal and everyday meaning of the language.
For compensation or setoff to take place, there must be an obligation owed Anderson by Pham. La.C.C. art. 1893 et seq. The burden of proving such an obligation is Anderson’s. Rosenthal v. Oubre, 504 So.2d 1102 (La.App. 5th Cir.1987). We find that Pham’s obligation was to transfer no less than $15,000.00 in inventory to Anderson, and we further find that Anderson has not proved a breach of that obligation, even considering the proffered testimony. Therefore, Anderson is not entitled to compensation. We also find that there was no failure of consideration since each party received what he was contractually entitled to receive. We affirm the judgment in the full amount of the promissory note.
ATTORNEY’S FEES
Anderson complains that the trial judge erred in awarding the contractual amount of attorney’s fees, thirty-three-and-one-third percent, as such an award is contrary to law, since no showing was made at the trial of the value of such legal services. We agree.
The trial judge stated his reason for awarding thirty-three-and-one-third percent attorney’s fees as follows:
The Court'is also going to award attorney’s fees in the sum of thirty-three and one-third percent as provided for in the note. [Emphasis added].
The trial judge made no determination of whether that percentage attorney’s fee was reasonable. We have examined the record and find no evidence presented as to the reasonableness of the attorney’s fees.
The Supreme Court, under its authority to regulate the practice of law, has instructed the trial and appellate courts to inquire into the reasonableness of attorney’s fees notwithstanding contractual provisions or La.C.C. art. 2000. Central Progressive Bank v. Bradley, 502 So.2d 1017 (La.1987); City of Baton Rouge v. Stauffer Chemical Company, 500 So.2d 397 (La.1987).
In Central Progressive Bank v. Bradley, 496 So.2d 525 (La.App. 1st Cir.1986) the First Circuit considered it error for the trial judge to apply the Code of Professional Responsibility, Rule DR2-106, in order to assess the reasonableness of a contractual attorney fee. The Louisiana Supreme Court reversed the First Circuit ruling and remanded the case to that circuit to review the trial judge’s judgment awarding the fee in Central Progressive Bank v. Bradley, 502 So.2d 1017 (La.1987). The Supreme Court explained at 1017:
The supreme court has a duty to assert that authority to regulate the practice of law. We held in Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982), that the prohibition against a lawyer accepting a “clearly excessive fee” found in Disciplinary Rule 2-106 of the Code of Professional Responsibility, cannot be abrogated by a provision in a note fixing the amount of attorney fees as a percentage of the amount to be collected. This prohibition likewise cannot be abrogated by a law fixing the amount of attorney fees as a percentage of the amount to be collected. City of Baton Rouge v. Stauffer Chemical Company, 500 So.2d 397 (La.1987). See also Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979). Since art. 2000 attempts to regulate attorney fees, it will not be enforced when the attorney fees fixed by the parties are excessive and unreasonable. Notwithstanding art. 2000, the courts may inquire into the reasonableness of such a fee.
In the present case the trial judge only considered the percentage set in the note and made no determination of whether the fee set was reasonable. Furthermore, we find the record barren of any evidence on the issue of reasonableness of the fees. In light of the mandate from the Supreme *175 Court we reverse that portion of the judgment awarding thirty-three-and-one-third percent attorney’s fees and remand to the trial court to make a determination of the amount of reasonable attorney’s fees to be awarded. 502 So.2d 1017.
JUDICIAL INTEREST
Anderson complains the judge was wrong in awarding judicial interest when the contract specifies seven percent interest per annum until paid. Pham concedes that Anderson is correct and that an error was made in drafting the judgment. Accordingly, we revise the judgment in part to delete any reference to judicial interest, and to now read as follows:
DECREE
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment on the promissory note in favor of plaintiff in the true sum of TWENTY-THOUSAND & 00/100 ($20,000.00) DOLLARS with interest thereon at the rate of SEVEN PERCENT (7%) from October 6, 1987 until paid, and all costs of these proceedings.
AFFIRMED IN PART, REVERSED IN PART, REVISED IN PART, AND REMANDED IN PART.